Terry Gross, terry@gba-law.com (103878)
Adam Belsky, adam@gba-law.com (147800)
Sarah Crowley, sarah@gba-law.com (273663)
GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, California 94104
Telephone: (415) 544-0200
Facsimile:  (415) 544-0201

*Attorneys for Plaintiff Will Winkelstein*
*And the proposed class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

WILL WINKELSTEIN , on behalf of himself and
all others similarly situated,

               Plaintiff,

    v.

EXPEDIA, INC., HOTELS.COM LP;
TRAVELOCITY.COM LP, SABRE
HOLDINGS CORPORATION,
PRICELINE.COM INCORPORATED,
BOOKING.COM B.V., BOOKING.COM
(USA), INC., ORBITZ WORLDWIDE, INC.,
HILTON WORLDWIDE INC., STARWOOD
HOTELS & RESORTS WORLDWIDE, INC.,
MARRIOTT INTERNATIONAL, INC., TRUMP
INTERNATIONAL HOTELS
MANAGEMENT, LLC, KIMPTON HOTEL &
RESTAURANT GROUP, LLC,
INTERCONTINENTAL HOTELS GROUP
RESOURCES, INC. and JOHN DOES 1-100,

               Defendants.

Case No. 12  5573

**COMPLAINT FOR VIOLATIONS
OF THE FEDERAL ANTITRUST
LAWS AND CALIFORNIA
ANTITRUST, UNFAIR
COMPETITION, CONSUMER
LEGAL REMEDIES AND FALSE
ADVERTISING LAWS**

CLASS ACTION

**DEMAND FOR JURY TRIAL**

1    Plaintiff, Will Winkelstein, by and through his attorneys, individually and on behalf of a class of
2    all those similarly situated, brings this action, demands a trial by jury and alleges as follows:

3                                        **NATURE OF ACTION**

4    1.        This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure
5    for damages and injunctive relief pursuant to the Sherman and Clayton Antitrust Acts (15 U.S.C. § 1 *et*
6    *seq.*), California's Cartwright Act, (Cal. Bus. & Prof. Code § 16720, *et seq.),* California's Unfair
7    Business Practices Act, (Cal. Bus. & Prof. Code § 17200, *et seq.*), California's False Advertising Law,
8    (Cal. Bus. & Prof. Code § 17500, *et seq.*), and the Consumer Legal Remedies Act, (Cal. Bus. & Prof.
9    Code § 1750, *et seq.*) to recover for the injuries sustained by Plaintiff and the members of the Plaintiff
10   Classes as a result of the Defendants' anticompetitive, unfair and deceptive conduct as described in this
11   Complaint.   The Plaintiff Class consists of all persons and entities that purchased hotel room
12   reservations online directly from one or more of the Defendants in the United States during the Class
13   Period.   The California subclass (together "Plaintiff Classes") consists of all persons and entities in the
14   State of California that purchased hotel room reservations online directly from one or more of the
15   Defendants in California during the Class Period.   Plaintiff seeks treble damages, injunctive relief, costs
16   of suit, and reasonable attorneys' fees pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15
17   and 26 and under California state law.   Plaintiff complains and alleges upon information and belief
18   based on investigation conducted by Plaintiff's counsel, except to those allegations pertaining to
19   Plaintiff personally which are alleged upon knowledge.

20   2.        Plaintiff brings this action against: (A) "the Online Defendants" or "Online Retailer
21   Defendants" and (B) "the Hotel Defendants." The Online Defendants are among the largest and most
22   dominant online travel companies that act as retailers for hotel room reservations in the United States.
23   They include: Expedia, Inc. ("Expedia"); Hotels.com LP ("Hotels.com")' Travelocity.com LP
24   ("Travelocity"); Sabre Holdings Corporation ("Sabre Holdings"); Booking.com B.V.; Booking.com
25   (USA), Inc. (together with Booking.com B.V., "Booking.com"); Priceline.com, Inc. ("Priceline"); and
26   Orbitz Worldwide, Inc. ("Orbitz"). The Online Defendants represent more than 50% of the online travel
27   business market.   The Hotel Defendants are among the largest hotels and hotel operating companies in
28   the world.   They include: Hilton Worldwide, Inc. ("Hilton"); Marriott International, Inc. ("Marriott");

1 Trump International Hotels Management, LLC ("Trump"); Intercontinental Hotels Group Resources Inc.
2 ("Intercontinental"); Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"); and Kimpton Hotel &
3 Restaurant Group, LLC ("Kimpton"). Hotel reservations made through the Online Defendants represent
4 approximately 50% of the Hotel Defendants' room reservations.

5     3.       The Defendants conspired, through a combination of contracts, mutual promises,
6 agreements and understandings to eliminate competition on the online prices offered to the public for the
7 Hotel Defendants' rooms and to fix the retail price for room reservations at the price the Hotel
8 Defendants were selling room reservations ("Rack Rates"). The Defendants succeeded in restraining
9 competition for room reservations in the market for online reservations. Defendants did so, in part,
10 through Retailer Agreements, a form of resale price maintenance, that included express terms to set,
11 maintain, and enforce minimum prices at the Rack Rates. These Retailer Agreements were unlawful
12 resale price maintenance agreements in that they constituted a conspiracy between the Online
13 Defendants and the Hotel Defendants to fix, maintain, and/or inflate Rack Rates in the market for online
14 reservations and to suppress and restrain competition and trade within the market for online reservations.

15     4.       The Hotel Defendants were charged with enforcing the scheme against price-cutting
16 online retailers, including through Retailer Agreements that required the Hotel Defendants to impose,
17 amend, enforce, and/or heighten enforcement of agreements to prevent price-cutting online retailers
18 from discounting room reservations or engaging in retail price competition for room reservations. Thus,
19 the Retailer Agreements were part of an anti-competitive scheme under which the Online Defendants
20 and the Hotel Defendants agreed that the Hotel Defendants would do one or more of the following: (a)
21 impose minimum price agreements on other online retailers; (b) enforce the Retailer Agreements on
22 other online retailers; and/ or (c) refuse to supply or cut off supply to price-cutting competing online
23 retailers.

24     5.       Defendants agreed among themselves that room reservations would not be sold for less
25 than the Rack Rate. Because the Online Defendants have the same clause in most or all of their
26 agreements, none of the Online Defendants compete with any of the other Online Defendants on price.
27 Moreover, because the retail rates for room reservations are set at Rack Rates, they are virtually identical
28 amongst the Online Defendants and each hotel owned or operated by the Hotel Defendants.

1    6.    As a result of the resale price maintenance conspiracy, each retailer-hotel
2   agreement with the major hotel chains, including the Hotel Defendants, provides that room
3   reservations will not be sold to Plaintiff or the Classes for less than the Rack Rate. The Rack
4   Rate, thus, becomes the artificially set price by which all customers must pay for any hotel room
5   online. The Rack Rate is not the result of any fair competition, but is instead the result of an
6   illegal antitrust conspiracy.

7    7.    The Online Defendants claim that they have "best price guarantees." This,
8   however, is a misleading statement. Even if a given Online Defendant is offering the best price
9   available, it is because all of the Online Defendants and Hotel Defendants have conspired to
10   ensure there is only one price. As a result, there is really no "best price," but instead a fixed
11   price that all consumers pay. It is a price that is illegally set pursuant to the terms of the illegal
12   antitrust conspiracy.

13    8.    Defendant Sabre, which operates Travelocity.com and Booking.com, has
14   admitted the unlawful nature of this conspiracy. Nancy St. Pierre, Sabre's spokeswoman,
15   explained that the scheme is "standard industry practice." *Practice that holds rates steady*
16   *among Hotel Defendants, travel sites coming under fire*, Karen Robinson-Jacobs, Dallas
17   Morning News (Nov. 16,2010) (available at http://hsmaidfw.blogspot.com). According to Sabre,
18   the scheme exists "so that the customer can have the confidence that they will get the best rate,
19   that they don't have to go on 18 different sites." *Id.* Of course, the "best rate" guarantees that all
20   the Online Defendants advertise is a sham since all the prices are fixed at the same anti-
21   competitive amount.

22    9.    The direct consequence of Defendants' unlawful conduct was that Plaintiff and
23   other members of the Classes paid overcharges on their purchases of room reservations
24   throughout the relevant period. If not for Defendants' anti-competitive, illegal and deceptive
25   business practices, Plaintiff and the Classes would have paid less for each of the room
26   reservations purchased during the Class Period. Plaintiff seeks damages and equitable relief
27   under Sections 4 and16 of the Clayton Act, 15 U.S.C, §§ 15(a) and 26, for violations of Section 1
28   of the Sherman Antitrust Act, 15 U.S.C. § 1. On behalf of a subclass of California residents who

1 | also paid overcharges on the purchase of their room reservations during the Class Period,

2 | Plaintiff and the Class bring claims for violation of California's Cartwright Act, (Cal. Bus. &

3 | Prof. Code § 16720, *et seq.),* California's Unfair Business Practices Act, (Cal. Bus. & Prof. Code

4 | § 17200, *et seq.*), California's False Advertising Law, (Cal. Bus. & Prof. Code § 17500, *et seq.*),

5 | and the Consumer Legal Remedies Act, (Cal. Bus. & Prof. Code § 1750, *et seq.*)

6 | **JURISDICTION AND VENUE**

7 | 10. This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and

8 | 26, for damages and to secure injunctive relief against Defendants for violations of §1 of the Sherman

9 | Act, 15 U.S.C. §1, as alleged herein.

10 | 11. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337 and by Sections

11 | 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26. The Court also has supplemental jurisdiction over

12 | the Plaintiff's California state law claims under 28 U.S.C. § 1367.

13 | 12. The activities of the Defendants and their co-conspirators, as described herein, were

14 | within the flow of, were intended to, and did have direct, substantial and reasonably foreseeable effects

15 | on the foreign and interstate commerce of the United States.

16 | 13. Venue is proper in this District pursuant to §§12 and 16 of the Clayton Act, 15 U.S.C.

17 | §§22 and 26, and 28 U.S.C. §1391(b)-(d). One or more of the Defendants resided, transacted business,

18 | was found, or had agents in this District, and a substantial part of the events giving rise to Plaintiff's

19 | claims occurred, and a substantial portion of the affected interstate trade and commerce described herein

20 | has been carried out, in this District. This Court has personal jurisdiction over each Defendant because

21 | each was engaged in an illegal scheme directed at and with the intended effect of causing injury to

22 | persons and entities residing in, located in, or doing business throughout the United States.

23 | 14. Intradistrict assignment to the San Francisco and Oakland Division is appropriate because

24 | a substantial part of the events or omissions which gave rise to the claims occurred in San Francisco

25 | County.

26 | //

27 | //

28 | //

1

## TRADE AND COMMERCE

2    15.    During the Class Period, Defendants sold online retail room reservations in the United

3  States, in a continuous and uninterrupted flow of interstate commerce. During the Class Period,

4  Defendants sold online retail room reservations in the State of California.

5    16.    During the Class Period, the Online Defendants collectively controlled a majority of the

6  internet travel business market and the Online Defendants and the Hotel Defendants collectively control

7  a dominant share or majority of the market for online retail sales of room reservations in the United

8  States.

9    17.    The business activities of the Defendants substantially affected interstate trade and

10  commerce in the United States.

11    18.    The business activities of the Defendant also substantially trade and commerce within the

12  State of California.

13

## PARTIES

14  **Plaintiff**

15    19.    Plaintiff Will Winkelstein is a resident and citizen of San Francisco, California . During

16  the four years immediately preceding this complaint, Plaintiff purchased room reservations directly from

17  one or more of the Online Defendants and from one or more of the Hotel Defendants. Plaintiff and the

18  other members of the Class have suffered injury to their business or property by reason of the violations

19  alleged herein.

20  **Defendants**

21    A. *Online Defendants*

22    20.    Defendant Expedia, Inc. is a Delaware corporation with its principal place of business at

23  333 108th Avenue NE, Bellevue, Washington 98004.

24    21.    Defendant Hotels.com LP is an affiliate of Expedia. Hotels.com LP is a Texas limited

25  partnership with its headquarters located at 10440 North Central Expressway, Suite 400, Dallas, Texas

26  75231.

27    22.    Defendant Travelocity.com LP is a Delaware limited partnership with its principal place

28  of business located at 3150 Sabre Drive, Southlake, Texas 76092. Travelocity is owned by

1   Defendant Sabre.

2       23.     Defendant Booking.com B.V. is a company based in Amsterdam, the Netherlands, with
3   its principal place of business at Herengracht 597, 1017 CE, Amsterdam, Netherlands. Booking.com
4   B.V. owns and operates Booking.com, the leading worldwide online room reservations agency by room
5   nights sold, attracting over 30 million unique visitors each month via the Internet from both leisure and
6   business markets worldwide. Booking.com B.V. is a wholly owned subsidiary of Priceline.com
7   Incorporated.

8       24.     Defendant Booking.com (USA), Inc. is a Delaware corporation with its primary place of
9   business located at 100 William Street, Suite 750, New York, New York 10038. Booking.com (USA),
10  Inc. is a wholly owned subsidiary of Priceline.com Incorporated.

11      25.     Defendant Priceline.com Incorporated is a Delaware corporation with its primary place of
12  business located at 800 Connecticut Avenue, Norwalk, Connecticut 06854.

13      26.     Defendant Orbitz Worldwide, Inc. is a Delaware corporation and its corporate
14  headquarters are located at 500 W. Madison Street, Suite 1000, Chicago, Illinois 60661.

15      27.     Defendant Sabre Holding Corporation, incorporated in Delaware, is headquartered at
16  3150 Sabre Drive, Southlake, Texas 76092.

17      B. *Hotel Defendants*

18      28.     Defendant Intercontinental Hotels Group Resources, Inc. is a Delaware corporation with
19  its primary place of business located at 3 Ravinia Drive, Suite 100, Atlanta, Georgia 30346-2149.

20      29.     Defendant Starwood Hotels &Resorts Worldwide, Inc. is a Maryland corporation with its
21  principal place of business at One Star Point, Stamford, Connecticut 06902. Starwood's hotels are
22  primarily operated under the brand names St. Regis®, The Luxury Collection®,

23  Sheraton®, Westin®, W®, Le Meridien®, Four Points® by Sheraton, Aloft® and Element®.

24      30.     Defendant Marriott International, Inc. is a Delaware corporation with its principal
25  place of business at 10400 Fernwood Road, Bethesda, Maryland 20817-1102.

26      31.     Defendant Trump International Hotels Management, LLC, doing business as The Trump
27  Hotel Collection, is a Delaware limited liability company headquartered at 725 Fifth Avenue, New
28  York, New York 10022.

1     32.     Defendant Hilton Worldwide, Inc. is a Delaware company doing business as Hilton

2 Hotels &Resorts with its primary place of business located at 7930 Jones Branch Drive, McLean,

3 Virginia.

4     33.     Defendant Kimpton Hotel & Restaurant Group, LLC is a Delaware limited liability

5 company with its principal place of business located at 222 Kearny Street, Suite 200, San Francisco, CA

6 94108.

7     34.     "Defendant" or "Defendants" as used herein, includes, in addition to those named

8 specifically above, all of the named Defendants' predecessors, including those merged with or acquired

9 by the named Defendants and the named Defendants' wholly-owned or controlled subsidiaries or

10 affiliates that sold online room reservations in interstate commerce directly to purchasers in the United

11 States and in California during the Class Period.

12     35.     To the extent that subsidiaries and divisions within Defendants' corporate families sold

13 online room reservations to direct purchasers, these subsidiaries played a material role in the conspiracy

14 alleged in this complaint because Defendants wished to ensure that the prices paid for such room

15 reservations would not undercut the artificially raised and inflated pricing that was the aim and intended

16 result of Defendants' coordinated and collusive behavior as alleged herein. Thus, all such entities within

17 the corporate family were active, knowing participants in the conspiracy alleged herein, and their

18 conduct in selling, pricing and collecting monies from Plaintiff and the members of the Plaintiff Class

19 for online room reservations was known to and approved by their respective corporate parent named as a

20 Defendant in this complaint.

21                               **CO-CONSPIRATORS**

22     36.     Various other persons, firms and corporations, not named as Defendants, have

23 participated as co-conspirators with Defendants and have performed acts and made statements in

24 furtherance of the conspiracy. The Defendants are jointly and severally liable for the acts of their co-

25 conspirators whether named or not named as Defendants in this complaint.

26     37.     Whenever reference is made to any act of any corporation, the allegation means that the

27 corporation engaged in the act by or through its officers, directors, agents, employees or representatives

28

1  while they were actively engaged in the management, direction, control or transaction of the

2  corporation's business or affairs.

3      38.    Each of the Defendants named herein acted as the agent or joint-venturer of or for the

4  other Defendants with respect to the acts, violations and common course of conduct alleged herein.

5                              **CLASS ACTION ALLEGATIONS**

6      39.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class

7  action on behalf of herself and all members of the following class (the "Class"):

8      All persons and entities in the United States who directly purchased a room at a Defendant Hotel
       reserved through an Online Retailer Defendant during the Class Period.

9
       Specifically excluded from this Class are: (i) room reservations made as part of a package deal;
10     or (ii) room reservations made without disclosure of the name of the hotel until after paying for
       the room reservation.

11
       Also specifically excluded from the Class are the Defendants; the officers, directors or
12     employees of any Defendant; any entity in which any Defendant has a controlling interest; and
       any affiliate, legal representative, heir or assign of any Defendant; any federal, state or local
13     governmental entities, any judicial officer presiding over this action and the members of his/her
       immediate family and judicial staff, and any juror assigned to this action.

14

15     40.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class

16  action on behalf of him/herself and all members of the following subclass (the "California Class")

17

18     All persons and entities throughout the State of California who
       purchased a room at a Defendant Hotel reserved through an Online
19     Retailer Defendant during the Class Period.

20     Specifically excluded from this Class are: (i) room reservations made
       as part of a package deal or (ii) room reservations made without disclosure of
21     the name of the hotel until after paying for the room reservation.

22
           Also specifically excluded from the Class are the Defendants; the officers,
23         directors or employees of any Defendant; any entity in which any Defendant has a
           controlling interest; and any affiliate, legal representative, heir or assign of any
24         Defendant; any federal, state or local governmental entities, any judicial officer
           presiding over this action and the members of his/her immediate family and
25         judicial staff, and any juror assigned to this action.

26

27     41.    Class Identity: The Plaintiff Classes are readily identifiable and are ones for which

28  records should exist.

1       42.     Numerosity: Due to the nature of the trade and commerce involved, Plaintiff believe that
2  there are thousands of Class members as above described, the exact number and their identities being
3  known to Defendants and their co-conspirators. The members of the Classes are so numerous that
4  joinder of all such members is impracticable.

5       43.     Typicality: Plaintiff's claims are typical of the claims of the members of the Classes
6  because Plaintiff purchased room reservations online directly from one or more of the Defendants or
7  their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct
8  giving rise to the claims of the members of the Classes and the relief sought is common to the Classes.

9       44.     Common Questions Predominate: Common questions of law and fact exist as to all
10 members of the Classes and predominate over any individual questions. Nearly all factual, legal, and
11 statutory relief issues raised herein are common to each of the members of the Classes and will apply
12 uniformly to every such member. Among the questions of law and fact common to the members of the
13 classes are:

14              a.      Whether Defendants and their co-conspirators engaged in agreements, contracts,
15                      combinations, and conspiracies to fix, raise, elevate, maintain, or stabilize prices
16                      of online room reservation sold in interstate commerce in the United States and
17                      in California;

18              b.      The identity of the participants of the alleged conspiracy;

19              c.      The duration of the conspiracy alleged herein and the acts performed by
20                      Defendants and their Co-conspirators in furtherance of the conspiracy;

21              d.      Whether the alleged conspiracy violated Section 1 of the Sherman Act, 15 U.S.C.
22                      §1, California's Cartwright Act, California's Unfair Competition Law,
23                      California's False Advertising Law and the California Consumer Legal Remedies
24                      Act;

25              e.      Whether Defendants' conduct constitutes fraudulent, unfair, or unlawful business
26                      practices;

27

28

1        f.     Whether Defendants engaged in a campaign of systematic misrepresentations

2              regarding the pricing of hotel room reservations and whether or not they were in

3              fact providing "best prices" for hotel room reservations;

4        g.    Whether the conduct of Defendants and their Co-conspirators, as alleged in this

5              Complaint, caused injury to the business or property of Plaintiff and the other

6              members of the Classes;

7        h.    The effect of Defendants' alleged conspiracy on the prices of online room

8              reservations sold in the United States and California during the Class Period;

9        i.     The appropriate class-wide measure of damages; and,

10       j.     The appropriate nature of injunctive relief.

11 These and other questions of law or fact which are common to the members of the Classes predominate
12 over any questions affecting only individual members of the Classes.

13     45.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes in that
14 Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Classes
15 and Plaintiff has retained counsel competent and experienced in the prosecution of class actions and
16 antitrust litigation to represent himself and the Classes.

17     46.    Superiority: A class action is superior to other available methods for the fair and efficient
18 adjudication of this controversy since individual joinder of all damaged members of the Classes is
19 impractical. Prosecution as a class action will eliminate the possibility of repetitious litigation. The
20 damages suffered by individual members of the Classes are relatively small, given the expense and
21 burden of individual prosecution of the claims asserted in this litigation. Absent a class action, it would
22 not be feasible for members of the Classes to seek redress for the violations of law herein alleged and
23 Defendants will retain the substantial funds received as a result of their wrongdoing, and such unlawful
24 and improper conduct will, in large measure, go unremedied. Further, individual litigation presents the
25 potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense
26 to all parties and to the court system. Therefore, a class action presents far fewer case management
27 difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive
28 supervision by a single court.

1    47.    Manageability:  There is no foreseeable difficulty in the management of this action as a

2   class action.

3                                    **MARKET STRUCTURE**

4    48.    The Online Defendants and the Hotel Defendants collectively control a dominant share or

5   majority of the market for online retail sales of room reservations in the United States.

6    49.    Through their websites, the Online Defendants solicit and enable consumers to make

7   travel plans online via the internet.  This includes renting cars, booking flights and making hotel room

8   reservations.

9    50.    The Online Defendants and other smaller online retailers offer their services to Hotel

10   Defendants and consumers through three business model structures:

11    a.    Agency Model:        The Online Defendants charge the Hotel Defendants a "service

12          fee" on a transaction basis for booking customers into rooms at a given hotel when the

13          class member pays the hotel for the room directly.  In an open and free market, the Hotel

14          Defendants would be setting and the Online Defendants would be requiring a competitive

15          price for room reservations in an effort to compete with other online service providers.

16          This is referred to as the Agency Model.

17    b.    Merchant Model:        The Online Defendants purchase and take title to blocks of hotel

18          rooms at negotiated wholesale rates from the Hotel Defendants and then re-sell the rooms

19          to consumers at higher rates keeping the difference as profit.  This is referred to as the

20          Merchant Model.

21    c.    Wholesale Model:        Smaller price cutting online retailers obtain access to rooms

22          through wholesalers which are intermediaries between the online travel retailers and the

23          hotels. These wholesalers work directly with the Hotel Defendants to obtain last minute

24          blocks of rooms that need to be filled.  The wholesalers then make these rooms available

25          to smaller online travel retailers at a wholesale rate.  The online travel retailers then, like

26          in the Merchant Model, re-sell the rooms to consumers at higher retail, keeping the

27          difference as profit.  Under the Wholesale Model, the online travel retailers can compete

28

1                 for customers through price competition. Online travel retailers can increase their sales

2                 by reducing their margins.

3       51.     Under these three business models, and through their unlawful agreements, the Online

4 Defendants gained a dominant presence in the online sale of hotel rooms, generating roughly half of

5 Hotel Defendants' room reservation traffic.

6                 **ANTICOMPETITIVE CONDUCT AND ACTS OF CONCEALMENT**

7       52.     Aware of their dominance, and knowing that the Hotel Defendants cannot afford to lose

8 access to their distribution network, the Online Defendants devised an illegal resale price maintenance

9 scheme to combat new or more efficient online travel retailers, including those that obtained access to

10 hotel rooms through the Wholesale Model, by extracting from the Hotel Defendants agreements from

11 them that required, on penalty of termination, and as a condition of continuing to do business with the

12 Online Defendants, that the Hotel Defendants would not allow competing online travel retailers from

13 discounting hotel room reservation rates below the Rack Rate. The failure to comply can result in

14 various penalties, including termination from the Online Defendants' websites.

15       53.     For example, in 2004, multiple hotels, including Defendants Hilton and Kimpton, and

16 Online Retailers, including Defendant Priceline, met together in Las Vegas for EyeforTravel's second

17 annual Revenue Management and Pricing in Travel conference. At the conference, Defendants Hilton,

18 Kimpton and Priceline discussed "rate parity and multichannel distribution and pricing strategies."

19 Hotel Online, Special Report, "Hilton, Kimpton, Sol Melia, Best Western, Hotwire, Priceline and

20 WorldRes to Discuss Revenue Optimization Strategies in the Hospitality Sector," May 6, 2004

21 (available at http://www.hotel-online.com/News/PR2004_2nd/May04_EyeForTravel.html). Jimmy Shu,

22 VP Revenue Management and Distribution at Kimpton led a presentation on the "issues associated with

23 adapting rate parity across all distribution channels." *Id.* EyeforTravel has annually sponsored these

24 conferences, and the attendees have expanded to include nearly all of the Defendants.

25       54.     The Hotel Defendants demonstrated their compliance by requiring that competing online

26 retailers agree to offer rooms only at the Rack Rate. As a further sign of their agreement, the Hotel

27 Defendants threatened online retailers with legal action and/or refused to allow online retailers, such as

28 Skoosh.com, to sell room reservations if the online retailer refused to price fix and maintain resale prices

1 at the Rack Rate. For example, Skoosh has publicly complained that it tried to sell discounted room

2 reservations on its online travel site but was thwarted by defendants' conspiracy.

3        "We were openly discounting and hotels would email, call and threaten legal action,'"

4        Skoosh told the BBC.

5        "Either we'd have to raise prices or take the hotels off our list," said Dorian Harris from

6        Skoosh.

7 Simon Gompertz, BBC News, "OFT launches investigation into online hotel room sales," September 16,

8 2010 (available at http://www.bbc.co.uk/news/business-11330463)

9        55.    According to Skoosh:

10        Price-fixing has been endemic in the hotel industry for years now.  It's created a Mafia-
           style atmosphere and an intolerable climate for new businesses.  Skoosh has been directly
11        threatened and, in turn, has defended its right to discount hotel prices.

12 Kevin May, Tnooz.com, "Regulator accuses Expedia, Booking.com and IHG in hotel competition

13 infringement probe," July 31, 2012 (available at http://www.tnooz.com/2012/07/31/news/regulator-

14 accuses-expedia-booking-com-and-ihg-in-hotel-competition-infringement-probe/)

15        56.    On August 31, 2010, Skoosh issued a letter from its CEO to Defendant Booking.com,

16 complaining about Booking.com's enforcement of the scheme.  The letter states, in part:

17
        Hi Kees,
18
        Both personally, and even as a direct competitor, I was always a fan of Booking.com.
19        Yours was one of the better hotel booking sites I always thought, with some innovative
        features. However, my rosy picture fast disappeared last winter when Skoosh started
20        being pursued by your business partners insisting that we raise our hotel prices to the
        same as yours. I'm hoping you can find the time to address some of the points below and
21        restore my faith in your company.

22        Some background then. Earlier this year we started getting some calls from angry and
        confused hoteliers insisting that we were selling their rooms too cheaply. I called them
23        back to work out what was going on and they mostly told me that Booking.com had been
        on to them threatening all sorts of nonsense if they didn't either remove their hotels
24        from Skoosh or force Skoosh to raise its prices.

25        I wondered how this was all happening so quickly and then I did a little research and
        found that Booking.com has an active policy of maintaining the same prices for all
26        companies across the internet. I even found a job ad of yours looking for 'Rate Parity
        Associates'. It seems like you've got a whole team out there beavering away to 'find any
27        rate inconsistencies between Booking.com and their competitors.' They're doing a good
        job I have to say. The hoteliers you work with are certainly concerned. One wrote to ask
28

1   me to close out their hotel on Skoosh: 'just to avoid the penalty that [Booking.com] is
    threatening us about'.

2   Some were less friendly. Many of the hoteliers wrote letters to me threatening legal
    action. One of them had a colleague of yours on one line and me on the other. It seemed
3   that your colleague was insisting that if we hadn't removed their hotel from Skoosh by
    the end of the phone call Booking.com would cancel the contract with them. They were
4   very scared.

5   I wasn't so much concerned as confused. I know that companies can do pretty much what
    they like with their buying prices but the rules around selling prices are quite tight. I'm
6   no lawyer but I did some reading here and there, went to the odd conference on
    competition law and spoke to a few competition lawyers. They warned me to be very
7   careful because if Skoosh is seen to be involved in price fixing we could be liable for a
    huge fine (10% of our worldwide turnover – I didn't fancy that!).
8
    So I took all this to various competition bureaus: The European Commission, the Office
9   of Fair Trading here in London, and your own Netherlands Competition Authority. They
    were all confused as to why it's in Booking.com's interest to ensure that all companies
10  are selling hotels at the same price. On the face of it, it looks like competition is being
    taken out of the market and it's making the hotel booking industry rather flat and dull.
11
    I'm sure you have got good reasons for all this so I thought rather than puzzle away myself or
12  wait for my case to reach the top of the pile at the competition bureaus, I could just ask you
    directly. I realise you may not want to comment directly on my blog but you can email me
13  through my website or call if you prefer. Of course you're not obliged to reply to me or say
    anything but, as a one-time fan of Booking.com I'd very much like this matter cleared up so I
14  can go on recommending your site to friends and family.

15  Cheers,
    Dorian Harris
16  Director, Skoosh.com

17
    Dorian Harris, Open Letter to Kees Koolen, CEO at Booking.com, August 31, 2010 (available at
18
    http://dorian.skoosh.com/open-letter-to-kees-koolen-ceo-at-booking-com/)
19
        57.    The threat by Booking.com to cut off the sale of room reservations for Hotel Defendants
20
    that do not enforce the non-competition scheme is entirely consistent with the "Rate
21
    Assured™ Hotel Program" implemented by Booking.com's parent Defendant Sabre (which also owns
22
    Defendant Travelocity). In fact, Sabre also runs a division called "Sabre Hospitality Solutions," which
23
    expressly markets and encourages hotels to adopt rate parity - in effect, the no scheme – by posting
24
    articles on the topic. *See* http://www.sabrehospitality.com/blog/2011-10-18.
25
        58.    The Hotel Defendants are enforcing the scheme on price-cutting competing online
26
    retailers. Below are a few examples:
27
            a.   Defendant Hilton required Skoosh's wholesale supplier in the United States,
28

1  AlliedTPro, to entirely cut off its contract with Skoosh as a result of Skoosh's discounting. AlliedTPro
2  wrote to Skoosh: "Trust me I would welcome the additional business but cannot risk our contracts with
3  Hilton." Dorian Harris, Open Letter to F.T.C. Chairman Jon Leibowitz, May 17, 2010 (available at
4  http://dorian.skoosh.com/open-letter-to-f-t-c-chairman-jon-leibowitz/).

5           b. Defendant Trump expressly admitted it was enforcing the Retailer Agreements,
6  emailing Skoosh as follows:

7                  The simple answer is; if we do not maintain parity with all, we are
8                  threatened with poor placement on sites and worse case… removal of
9                  hotel from sales sites. That is the way OTA's operate in USA. Expedia
10                 threatens if Travelocity gets lower rate and vice-versa. It is a vicious cycle
11                 if we get out of parity.

12                 I think the model in Europe is built to operate more competitively but that
13                 is not the model here. (Much as I wish it was the same as Europe!) I hope
14                 this helps you understand why we must be strict with what is offered on all
15                 websites *Id.*

16           c.     Defendant Intercontinental wrote to Skoosh "demanding that Skoosh either raise
17  its rates to the same as the hotels and its other distribution partners (a practice known in the industry as
18  'rate parity'….) or remove the hotels entirely from our site." Dorian Harris, Open letter to William
19  Baer, Arnold & Porter LLP, August 8, 2012 (available at http://dorian.skoosh.com/open-letter-to-
20  william-baer-arnold-porter-llp/).

21           d.     Defendant Marriott announced "a sweeping overhaul of its transient pricing,
22  bringing parity to all Marriott distribution channels - offline and online." Bruce Serlen, Business Travel
23  News, Marriott Revamps Pricing: Offers Complete Parity, Curtails Fixed Consortia Rates, November
24  10, 2003 (available at http://www.businesstravelnews.com/More-News/Marriott-Revamps-Pricing--
25  Offers-Complete-Parity,-Curtails-Fixed-Consortia-Rates---2003-11-10/?a=btn).

26           e.     An executive at Defendant Starwood, which runs Le Meridien, Westin, W and
27  Sheraton hotels, emailed a hotel discounter and wrote: "Should a wholesaler decide to sell the rooms on
28  a room only basis, he has to make sure that the per contract agreed minimum mark-up is guaranteed."

1   Otherwise, according to the Starwood executive, the "violation" of Starwood's Best Rate Guarantee
2   would be "really serious" and the breach reported to headquarters. Holly Watt and Robert Winnett,
3   Hotels face Inquiry in Price-Fixing Scandal, The Daily Telegraph, April 21, 2011(available at
4   http://www.telegraph.co.uk/finance/newsbysector/retailandconsumer/8467755/Hotels-face-inquiry-in-
5   price-fixing-scandal.html).

6       59.    The Hotel Defendants enforced the scheme against the Online Defendants' rivals because
7   they feared losing access to the Online Defendants' website network to sell their rooms if they did not.
8   According to Ashwin Kamlani, founder of Hotel Internet Help Inc., which helps independent hotels get
9   more sales via cyberspace:

10      The hotels enforce rate parity because they fear the consequences of not maintaining rate
    parity.... They fear having their hotel dropped to page 6 or even pulled off their largest
11      producing [online travel agents] sites, which translates into a potentially significant loss
    of revenue.
12

13  Karen Robinson-Jacobs, *Practice that holds rates steady among hotels, travel sites coming under fire*,
14  Dallas Morning News, November 16, 2010 (available at http://hsmaidfw.blogspot.com/) (bracketed
15  alterations in original).

16      60.    The existence of the scheme is confirmed by Kayak.com, a price comparison website,
17  that told Skoosh on several occasions that it had to "play the Orbitz game" – in other words, maintain
18  rate parity – or Kayak would no longer publish Skoosh's prices. Kayak enforced rate parity on behalf of
19  the Online Defendants because they account for a material part of Kayak's total revenues. After Skoosh
20  reported the non-competition scheme to governmental authorities, Kayak stopped publishing Skoosh's
21  prices on its price comparison site. *See* Dorian Harris, Open Letter to Steve Hafner, C.E.O. Kayak.com,
22  November 18, 2010 (available at http://dorian.skoosh.com/open-letter-to-steve-hafner-c-e-o-kayak-
23  com/).

24      61.    The Online Defendants put the Hotel Defendants on notice that unless the Hotel
25  Defendants enforced the scheme, they would refuse to sell the Hotel Defendants' rooms on their
26  websites. For example, in 2009, Defendant Expedia refused to list or sell rooms from Choice Hotels and
27  President Dara Khosrowshahi explained:

28

"...As far as the discussions that we've had with Choice, we are not doing business with Choice right now on a chain basis. We don't have a vast majority of Choice hotels on our side," said Khosrowshahi, as per the transcript on Seeking Alpha. He declined to comment further on negotiations.

But he added, "First of all, our primary goal is to have the broadest, deepest set and highest quality set of inventory for the benefit of our customers. And this doesn't signal any kind of change in our overall philosophy as far as how we work with our hotel partners and what we're looking at. It's not really an issue of economics; it's more than issue of our wanting rate parity and inventory parity for our customers."

"When our customers come to Expedia, we want them to know that they're getting the best prices and certainly, we are insistent on that. And to the extent that Choice doesn't want to work under those terms. We won't be doing business with each other. Those are the terms that we work with our others strategic partners, they're comfortable where they were comfortable with it. So, its nothing usual from what I would say is typical practice for us in most of our other OTA competitors so to speak."

EyeforTravel, *Expedia stresses on rate parity and inventory parity for its customers*, October 30, 2009 (available at http://www.eyefortravel.com/distribution-strategies/expedia-stresses-rate-parity-and-inventory-parity-its-customers).

62.     As a result, the Online Defendants do not compete on the basis of price for room reservations. Rather, all online sales of room reservations for the same rooms are at the Rack Rate. In fact, a federal court in the Western District of Texas recently commented on the similarity of the business models and identical pricing structures of the Online Defendants:

After reviewing the record, it is clear that the Defendants not only engage in a common course of conduct, but that many of their business practices are virtually identical.

. . . .

These practices include but are not limited to the manner in which they contract with the hotels, the manner in which they determine and assess cancellation policies and fees, the manner in which they determine the mark up and fees to arrive at an acceptable margin and retail/sell rate; and, the manner in which they calculate, assess and pay hotel occupancy taxes.

. . . .

In fact, Plaintiff's counsel was obviously curious, at one juncture, to determine exactly how the companies remain competitive that they operate in the same fashion and even charge the same price:

Q: So – so given that, how do you compete with Expedia and Travelocity and the like if everybody is contractually bound to charge the same price for that hotel room?

A: Right. I don't have knowledge of the other contracts; but, you know, relative to competing, our sites market and make available and distribute the opportunity for

1

*customers to reserve hotel rooms and, you know, it's really in our marketing and distribution strategies in terms of how we compete.*

2

. . . .

3

4

5

Almost without exception, the net rate and sell rate for a given room on a given day are the same among the OTC's because the Defendants' agreements with the hotels all contain "parity" or "Most Favored Nation" clauses. This also makes the OTC margins the same.

6

7

8

Memorandum and Opinion on Class Certification, *City of San Antonio v. Hotels.com, et al.*, No. SA-06-CA-381-0G (W.D. Tex) at 18-20.

9

10

11

12

13

63.    In a 2007 deposition in the case, Tim Gordon, the Senior Vice President of Priceline, testified that the agreements between the Hotel Defendants and the Online Defendants resulted in the their offering identical prices for online room reservations, with each enjoying the same non-competitive margin. *City of San Antonio,* Dkt. # 188-3, at 4-5. Mr. Gordon testified that Priceline's contract with Hilton required a specific mark-up that would be the same for all of Priceline's competitors.

14

15

16

17

64.    The required uniform price maintenance has prevented the Online Defendants and the Hotel Defendants from providing online room reservations at discounted rates by, for example, accepting a lower profit margin or lower commission payment. By fixing and maintaining the retail price of online room reservations, the Online Defendants have been able to stabilize their profit margins and avoid price competition.

18

19

20

21

22

65.    The unlawful agreements have also further entrenched the dominant market positions of the Online Defendants and created significant market entry barriers by preventing other online travel retailers from gaining market share by providing online room reservations at discounted rates. Blink Booking, a mobile-only reservation service that has been impacted by the unlawful agreements at issue, has stated that:

23

24

25

26

27

28

We've long believed that the big online travel agents have been guilty of denying consumers the best prices – and that hotel's hands are tied by price parity agreements. The online travel market may appear to offer plenty of choice and competition, but the reality is that there are lots of different shop windows selling the same rooms and the same prices – with those prices agreed through parity deals between the big groups and the big OTAs. Smaller internet travel agents like Blink have long wanted to offer lower prices to customers by sacrificing some of the margin on the prices we buy rooms at from the hotel groups. However, there is pressure to maintain pricing to protect the interests of a few big travel groups, at the expense of the

traveler.

*Expedia and Booking.com Deny Breaking Competition Rules*, TRAVEL WEEKLY.COM, August 1, 2012,
http://www.travelweekly.co.uk/Articles/2012/08/01/41257/expediaandbooking.comdenybreaking competitionrules.html (last visited September 2012).

66.   The use of these unlawful agreements is a coordinated industry-wide endeavor.  In 2004, numerous Defendants including Hilton, Kimpton, and Priceline gathered for a Revenue Management and Pricing in Travel conference hosted by EyeForTravel.  Jimmy Shu, Vice-President at Kimpton, gave a presentation on rate parity.  This annual meeting is now attended by nearly all the Defendants. Intercontinental Hotel Group has stated that its use of rate parity agreements is "consistent with the long-standing approach of the global hotel industry.  Sabre has also admitted that the challenged rate parity practice is a "standard industry practice."

67.   As a result of the deliberate actions to avoid price competition and deprive consumers of the benefits of such competition, the Online Defendants offer online room reservations for the same price.  In a deposition, Peggy Bianco, Vice President of Global Hotel Services for Orbitz, testified that Orbitz and competitors like Expedia and Travelocity were contractually bound to charge the same price for hotel rooms, and that they do not compete on price.  *City of San Antonio*, Memorandum and Opinion on Class Certification, Dkt. # 248, at 19, n. 18.

68.   As a result of the scheme's success, the Online Defendants are confident that all of the prices listed between them for the same room will be identical.  Thus, they each offer nearly identical "best price" guarantees, confident that it is the only price available even among competitors.  The following example illustrate this point:

a.   Hotels.com offers a "Price Match Guarantee" stating that:

The hotels.com Price Match Guarantee protects your pocket book and takes the worry out of booking a hotel room. After you book with hotels.com, if you find a lower publicly available rate online for the same dates, hotel, and room category, we will match the price and refund you the difference.

And unlike some of our competitors, we will match the price right up to the time of the property's cancellation deadline, whether that is three days after you made the reservation or three months. So stop worrying and start booking.

http://www.hotels.com/customer_care/pillar/price_guarantee.html

b.   Expedia.com offers a "Best Price Guarantee" stating that:

1
2

We're so confident you'll find the best price for your trip here on Expedia that we guarantee it. Find a cheaper trip within 24 hours of booking and we'll refund the difference-and give you a travel coupon worth $50.

3
4

Expedia's Best Price Guarantee covers virtually every part of your trip: flights, hotels, vacation packages, cruises, rental cars, and activities. Here's how to tell if your Expedia reservation qualifies:

5
6
7
8

- Are travel dates the same?
- Is the hotel, room type and rate plan and cancellation policy the same?
- Is the airline, class, fare and cancellation policy the same?
- Is the car class and cancellation policy the same?
- Is the cruise line, cabin, class, fare, and cancellation policy the same?
- Does each part of your package match?
- Is the other fare from a U.S.-based website and quoted in dollars?

9    http://www.expedia.com/p/info-other/guarantees.htm

10                c.      Orbitz.com offers a lowest price guarantee entitled "Orbitz Price Assurance®"

11   that purports to "automatically" refund customers if lower prices exist elsewhere. According to Orbitz:

12
13

Once your booking is confirmed on Orbitz, we start tracking to see if another Orbitz customer subsequently books the same flight or hotel reservation on Orbitz at a lower price.

14
15

If they do, we'll issue you Orbucks for 110% of the difference. Amounts range from $5 to $250 in Orbucks per airline ticket, or $5 to $500 in Orbucks per hotel room.

16
17

We'll continue tracking until the day you leave. So each time the price drops and another customer subsequently books your same itinerary for a lower amount, your Orbucks amount will increase.

18   http://www.orbitz.com/mktg/price-assurance/

19                d.      Travelocity's guarantee states as follows:

20   From the Price, To the Room, To the Trip, It's Guaranteed!!

21         . . . .

22
23
24

The Price: You find a qualifying lower rate after you make your booking: If you find a qualifying lower rate than the one you booked on Travelocity and complete the guarantee form in a timely manner we'll refund you the difference between what you paid and this lower price.

25   http://www.travelocity.com/Promotions/0,,TRAVELOCITY%7C4818%7Csituations,00.html

26                e.      Booking.com offers "low rates" and the "Best Price Guaranteed." According to

27   its website:

28         Best Price Guaranteed

1    We promise that when you book with us, you'll get the lowest possible price for your
     room.

2    Guaranteed.

3

4    http://www.booking.com/general.en-
     us.html?sid=5b0d5c2f75b4a3615c501d3e02a993d1;dcid=1;tmpl=doc/rate_guarantee

5

6    69.    Absent their collusive agreement, the Online Defendants could not offer the best price

7    guarantees unless they engaged in price competition and discounted the Rack Rates. Defendants' rate

8    parity is evidenced by examples of hotel rooms available for reservation on the Online Defendants'

9    internet sites. These examples were searched on August 28, 2012 for a hotel room checking in on

     October 17, 2012 and checking out on October 18, 2012.

| W San Diego | |
| --- | --- |
| San Diego, California | |
| (1 King Bed; Refundable) | |
| **Retailer** | **Price** |
| Priceline.com | $220 |
| Expedia.com | $220 |
| Hotels.com | $220 |
| Travelocity.com | $220 |
| Booking.com | $220 |
| Orbitz.com | $220 |
| W San Diego (www.thewsandiegohotel.com) | $220 |

| Sheraton Chicago Hotel & Towers | |
| --- | --- |
| Chicago, Illinois | |
| (1 King Bed; Refundable) | |
| **Retailer** | **Price** |
| Priceline.com | $329 |

| | |
|---|---|
| Expedia.com | $329 |
| Hotels.com | $329 |
| Travelocity.com | $329 |
| Booking.com | $329 |
| Orbitz.com | $329 |
| Sheraton.com | $329 |

| Miami Marriott Biscayne Bay<br>Miami, Florida<br>(1 King Bed; Refundable) | |
|---|---|
| **Retailer** | **Price** |
| Priceline.com | $199 |
| Expedia.com | $199 |
| Hotels.com | $199 |
| Travelocity.com | $199 |
| Booking.com | $199 |
| Orbitz.com | $199 |
| Marriot.com | $199 |

| Omni Parker House<br>Boston, Massachusetts<br>(1 King Bed; Refundable) | |
|---|---|
| **Retailer** | **Price** |
| Priceline.com | $339 |
| Expedia.com | $339 |
| Hotels.com | $339 |
| Travelocity.com | $339 |

| Booking.com | $339 |
| Orbitz.com | $339 |
| Omni Parker House (www.omnihotels.com) | $339 |

70.     The Defendants' price-fixing conspiracy is also prevalent elsewhere. The British Office of Fair Trade ("OFT") recently issued a "Statement of Objections" alleging that Expedia infringed competition through the very same price fixing agreements with respect to British hotel rooms.  The *Telegraph* reported that Expedia admitted that "it has engaged in cartel conduct in breach of the law," and is "providing information on its rivals under a 'leniency deal'" with the British authorities.

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT
## CONCEALMENT, EQUITABLE TOLLING AND CONTINUING VIOLATIONS

71.     Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this action.

72.     Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of concealment and continuing misrepresentations, as alleged above.

73.     Because of the self-concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiff and the any applicable statutes of limitations affecting the claims raised herein is tolled.

74.     Defendants continue to engage in the anticompetitive and deceptive practices alleged herein causing continuing injury such that each instance that Defendants engaged in the conduct complained of herein and each instance that a member of the Classes purchased a Room Reservation constitutes part of a continuing violation and further operates to toll the statutes of limitation.

//

//

//

1

## ANTITRUST IMPACT AND DAMAGES

2      75.    Defendants' unlawful conspiracy has had at least the following effects:

3      a.    Prices charged by Defendants and their co-conspirators to Plaintiff and the members of
4 the Class for Room Reservations were artificially fixed, raised, stabilized and maintained at artificially
5 inflated and supra-competitive levels in the United States;

6      b.    Plaintiffs and the other members of the Class paid more for Room Reservations than they
7 would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators'
8 collusive and unlawful activities;

9      c.    Competition in the sale of Room Reservations was unreasonably restrained, suppressed
10 and eliminated in the United States; and,

11      d.    As a direct and proximate result of Defendants' illegal combinations, agreements,
12 contracts or conspiracies, Plaintiff and the members of the Class have been injured in their respective
13 businesses and property, in amounts according to proof at trial. Defendants and their co-conspirators
14 have engaged in anticompetitive practices, the purpose and effect of which was and continues to be to
15 set, artificially fix and/or maintain the prices charged to Plaintiff and Class members.

16

17

## CLAIMS FOR RELIEF

18

## FIRST CLAIM FOR RELIEF

19

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT

20

## (Against All Defendants on behalf of the Class)

21      76.    Plaintiff hereby incorporates and realleges, as though fully set forth herein, each and
22 every allegation set forth in the preceding paragraphs of this Complaint.

23      77.    Beginning at a time presently unknown to Plaintiff, and continuing through the present,
24 the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into continuing
25 agreements, contracts, combinations and conspiracies in unreasonable restraint of trade to artificially
26 raise, fix, maintain, and/or stabilize prices for Room Reservations in the United States, in violation of
27 Section 1 of the Sherman Act, 15 U.S.C. §1.

28

1        78.     The agreements, contracts, combinations or conspiracies have resulted in an agreement,
2 understanding or concerted action between and among the Defendants and their co-conspirators in
3 furtherance of which the Defendants and their co-conspirators fixed, raised, maintained, and/or
4 stabilized prices for Room reservations in the United States. Such agreements, contracts, combinations,
5 or conspiracies constitute per se violations of the federal antitrust laws and are in any event,
6 unreasonable and unlawful restraints of trade.

7        79.     The Defendants' contracts, combinations, agreements, understandings or concerted
8 actions with the co-conspirators occurred in or affected interstate commerce. The Defendants' unlawful
9 conduct was undertaken through mutual understandings, combinations or agreements by, between and
10 among the Defendants and other unnamed co-conspirators. These other co-conspirators have either
11 acted willingly or, due to coercion, unwillingly in furtherance of the unlawful restraint of trade alleged
12 herein.

13        80.     The agreements, contracts, combinations or conspiracies have had the following effects,
14 among others:

15              a.     Prices charged to Plaintiff and Class members for Room Reservations were fixed
16                 or stabilized at higher, artificially derived, supra-competitive levels;

17              b.     Plaintiff and Class members have been deprived of the benefits of free, open and
18                 unrestricted competition in the market for Room Reservations; and,

19              c.     Competition in establishing the prices paid, customers of, and territories for Room
20                 Reservations has been unlawfully restrained, suppressed and eliminated.

21       **81.**     As a proximate result of the Defendants' unlawful conduct, Plaintiff and the Class
22 members have suffered injury in that they have paid supra-competitive prices for Room Reservations.
23 Plaintiff and Class members will continue to be injured in their business and property by paying more
24 for Room Reservations purchased directly from the Defendants and their co-conspirators than they
25 would pay in the absence of the agreements, contracts, combinations or conspiracies.

26 //

27 //

28 //

1

### SECOND CLAIM FOR RELIEF

### VIOLATION OF THE CARTWRIGHT ACT

### CALIFORNIA BUSINESS & PROFESSIONS CODE § 16720, *et seq.*

### (California Class Only)

**82.** Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

**83.** The illegal antitrust agreements entered into between and amongst the Online Defendants and the Hotel Defendants, and their enforcement, constitute contracts, combinations and conspiracies that substantially, unreasonably, and unduly restrain trade in the relevant markets and harmed Plaintiff and the California Class.

**84.** The illegal antitrust agreements entered into between and amongst the Online Defendants and the Hotel Defendants cover a sufficiently substantial percentage of the relevant market(s) to harm competition.

**85.** The Defendants are liable for the creation, maintenance, and enforcement of the illegal antitrust agreements under a *per se*, "quick look," and/or rule of reason standard.

**86.** The Defendants possess market power.

**87.** The illegal antitrust agreements entered into between and amongst the Online Defendants and the Hotel Defendants harm competition by artificially raising and stabilizing prices.

**88.** There is no legitimate, pro-competitive business justification for the misconduct of the Defendants, as well as the conspiratorial antitrust agreements entered into between and amongst the Online Defendants and the Hotel Defendants that outweighs their harmful effect.

**89.** Plaintiff and the California Class were injured in their business and property by the collusion and conspiracy alleged above which facilitated, enabled, assisted or furthered Defendants' substantial exclusion of competition in the relevant market(s).

**90.** Plaintiff and the other members of the California Class have been forced to pay higher prices for hotel room reservations than they would have paid in the absence of Defendants' unlawful conduct.

1    **91.**    The misconduct of the Defendants described herein is in violation of the California

2 Cartwright Act, California Business & Professions Code § 16720, *et seq*.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE UNFAIR COMPETITION LAW

### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *et seq*.

### (California Class Only)

**92.**    Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

**93.**    Defendants have engaged in unfair competition within the meaning of the California Business & Professions Code § 17200 *et seq*. because Defendants' conduct is fraudulent, unfair and unlawful. Defendants misrepresented the fact that they were offering the "best prices" when in reality the only prices being offered by the Defendants for hotel reservations was the price that had been artificially manipulated and set by the Defendants.

**94.**    Defendants' business practices are unfair because there is no justification for these improper business practices that outweighs the harm that such business practices inflict upon consumers, including Plaintiff and the Class. Defendants' business practices and each of them offend established public policy and/or are oppressive, unscrupulous and/or substantially injurious to consumers, which harm greatly outweighs any benefit associated with the business practice. California has an interest in preserving a business environment free of fraudulent and deceptive business practices.

**95.**    Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

**96.**    Plaintiff and the Class are entitled to relief, including full restitution and/or restitutionary disgorgement of money obtained, to the greatest extent permitted by law, which may have been obtained by Defendants as a result of such improper business acts and practices. Plaintiff and the Class are entitled to injunctive relief enjoining the Defendants from engaging in the practices described herein.

1

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

### (California Civil Code § 1750, *et seq.*)

### (California Class Only)

97.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

98.     The Consumer Legal Remedies Act, Civil Code Section 1750, *et seq.* (hereinafter "CLRA") was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code Section 1770. The CLRA applies to Defendants' actions and conduct described herein because it extends to the sale of goods and services for personal, family and/or household use.

99.     At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code Section 1761(d).

100.    The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code Section 1761.

101.    Each of these Defendants represent that their rates are the "Best Price" or a "Low Price" or similar words intended to convey to consumers that the consumer was obtaining a good deal.

102.    These representations are false or misleading in that there is no "Best Price" or "Low Price," just a fixed and uniform price.

103.    Defendants' misrepresentations, failure to disclose and knowing concealment of the prices for hotel rooms are misrepresentations, omissions, and concealments of material fact that constitute unfair and/or deceptive business practices in violation of Civil Code § 1770(a) and caused harm to Plaintiff and Class Members who would not have purchased and/or paid as much for their rooms had they known the truth.

//

//

1    104.    In accordance with Civil Code § 1780(a), Plaintiff and the Class seek

2  Injunctive and equitable relief for violations of the CLRA.  After providing appropriate notice and

3  demand, Plaintiff will subsequently amend this Complaint to also include a request for damages.

4  Plaintiff and the Class also request that this Court enter such orders or judgments as may be necessary to

5  restore to any person in interest any money which may have been acquired by means of such unfair

6  business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil

7  Code § 1780 and the Prayer for Relief.

8  ## FIFTH CLAIM FOR RELIEF

9  ### VIOLATION OF THE FALSE ADVERTISING LAW

10  ### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

11  ### (CALIFORNIA CLASS ONLY)

12    105.    Plaintiff hereby incorporates each preceding and succeeding paragraph as

13  Though fully set forth herein.

14    106.    Business and Professions Code § 17500, *et seq.*, prohibits any person,

15  firm, corporation, association, or any employee thereof, with the intent to dispose of real or personal

16  property, from performing services or inducing the public to enter into any obligation relating to

17  property or services, disseminating any untrue or misleading statement concerning such property or

18  services which the Defendants knew, or in the exercise of reasonable care should have known, was

19  untrue or misleading.

20    A court may order injunctive relief and restitution to affected members as remedies for any

21  violations of Business and Professions Code § 17500.

22    107.    At all relevant times herein, Defendants have engaged in disseminating

23  false and misleading communications which misrepresent the characteristics, nature, quality and safety

24  of the services and products being sold to Plaintiff and the Class.  Defendants' business practices

25  include, without limitation:

26    a.    Selling to Plaintiff and the Class hotel room reservations at purportedly the "best

27    price" when in fact the prices were set as a result of an illegal antitrust conspiracy;

28

1
        b. Failing to disclose to Plaintiff and the Class that the Online Defendants and the Hotel

2
          Defendants had engaged in a conspiracy to manipulate the price of hotel room

3
          reservations;

4
        c. Engaging in the conduct as set forth in this Complaint, including but not limited to

5
          implementing and enforcing illegal and anticompetitive agreements between and

6
          amongst the Online Defendants and the Hotel Defendants;

7
        d. Violating the other statutes and common law causes of action as alleged in this

8
          Complaint.

9
      108.    Defendants engaged in the advertising and failure to disclose the

10 conspiracy as herein alleged with the intent to induce Plaintiffs to purchase Defendants' products and

11 services.

12
      109.    Defendants caused to be made or disseminated throughout California and

13 the United States, through advertising, marketing and other publications, statements that are untrue or

14 misleading, and which were known, or through the exercise of reasonable care should have been known

15 by the Defendants to be untrue and misleading to consumers including Plaintiff and the Class.

16 Defendants' advertising was untrue or misleading and likely to deceive the public by concealing the

17 nature and existence of the antitrust conspiracy entered into between and amongst the Online Defendants

18 and the Hotel Defendants to manipulate the price of hotel room reservations.

19
      110.    In purchasing hotel room reservations from the Defendants, Plaintiff and

20 the Class reasonably believed and/or depended on the material false and/or misleading information

21 provided by the Defendants. In other words, Defendants induced Plaintiff and the Class to purchase

22 hotel room reservations using the Online Defendants and from the Hotel Defendants.

23
      111.    In making and disseminating the statements herein alleged, Defendants

24 knew, or by the exercise of reasonable care should have known, that the statements were and are untrue

25 or misleading and so acted in violation of California Business and Professions Code § 17500, *et seq*.

26 Plaintiff and the Class were exposed to Defendants' advertising and its false and misleading statements

27 and were affected by the advertising in that they believed it to be true and/or relied on it when making

28 purchasing decisions.

COMPLAINT

1       112.    Plaintiff and the Class have suffered injury in fact. Accordingly, the Court must

2 issue an injunction restraining and enjoining the Defendants from sending or transmitting false and

3 misleading advertising to individuals or entities concerning the pricing of hotel rooms. Plaintiff and the

4 Class further request an order restoring to Plaintiff and the Class any money or property, real or

5 personal, which may have been lost by means of Defendants' false advertising.

6                                    **PRAYER**

7       113.    WHEREFORE, Plaintiff and the Class pray as follows:

8       A.    That the Court determines that this action may be maintained as a class action under Rule

9 23 of the Federal Rules of Civil Procedure, and that Plaintiff be named as a representative of the Classes.

10      B.    That the contract, combination or conspiracy, and the acts done in furtherance thereof by

11 Defendants and their co-conspirators as alleged in this complaint, be adjudged to have been violations of

12 Section 1 of the Sherman Act, 15 U.S.C. §1.

13      C.    That judgment be entered for Plaintiff and members of the Classes against Defendants for

14 three times the amount of damages sustained by Plaintiff and the members of the Classes as allowed by

15 law, together with the costs of this action, including reasonable attorneys' fees, pursuant to Sections 4

16 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26.

17      D.    That the unlawful conduct alleged herein be adjudged and decreed to be in violation of

18 the California Cartwright Act.

19      E.    That the unlawful conduct alleged herein be adjudged and decreed to be a fraudulent,

20 unfair, or unlawful business practice in violation of the California Unfair Competition Law.

21      F.    That the unlawful conduct alleged herein be adjudged and decreed to be a violation of the

22 California False Advertising Law.

23      G.    That the unlawful conduct alleged herein be adjudged and decreed to be in violation of

24 the California Consumer Legal Remedies Act.

25      H.    That Plaintiff and the Classes be awarded pre-judgment and post-judgment interest at the

26 highest legal rate from and after the date of service of this Complaint to the extent provided by law;

27      H.    That Defendants and their co-conspirators be enjoined from further violations of the

28 federal and California antitrust laws and other California law;

1        J.   That Plaintiff and members of the Classes recover their costs of suit, including a

2  reasonable attorneys' fee, as provided by law; and,

3        K.   That Plaintiff and members of the Classes have such other, further or different relief, as

4  the case may require and the Court may deem just and proper under the circumstances.

5                                   **JURY TRIAL DEMAND**

6        Pursuant to Federal Rules of Civil Procedure, Rule 38(b), Plaintiff and the Classes hereby

7  demand a trial by jury on all issues so triable.

8

9  Dated:  October 30, 2012

10

11

12                                       Terry Gross
                                       Adam C. Belsky

13                                       Sarah Crowley
                                       GROSS BELSKY ALONSO LLP

14                                       One Sansome Street, Suite 3670
                                       San Francisco, CA 94104

15                                       Telephone:  (415) 544-0200
                                       Facsimile:   (415) 544-0201

16

17                                       *Attorneys for Plaintiff Will Winkelstein*
                                     *And the Proposed Class*

18

19

20

21

22

23

24

25

26

27

28